


**U.S. Department of Justice**

FILED
U.S. DISTRICT COURT
United States Attorney OF MARYLAND
District of Maryland
Northern Division 2012 NOV -1  P 12: 33

---

*Rod J. Rosenstein*
*United States Attorney*

*James Wallner*
*Assistant United States Attorney*

*36 South Charles Street*
*Fourth Floor*
*Baltimore, Maryland 21201*

*DIRECT: 410-209-4971*
*MAIN: 410-209-4800*
*FAX: 410-962-3124*
*TTY/TDD: 410-962-4462*
*James.Wallner@usdoj.gov*

September 21, 2012

Gerry Ruter, Esq.
9411 Philadelphia Road, Suite O
Baltimore, Maryland 21237

> RE:  *United States v. Donte Wise*
> Criminal Number: WDQ-12-0458

Dear Mr. Ruter:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by **October 19, 2012**, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

1.   The Defendant agrees to plead guilty to Counts Two and Three of the Indictment now pending against him, which charge him with conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846 and with using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). The Defendant admits that he is, in fact, guilty of those offenses and will so advise the Court.

### Elements of the Offense

2.   The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

> a.   **Count Two: Conspiracy to Distribute and Possess with the Intent to Distribute Five Kilograms or more of Cocaine.**

Revised 8/8/08

Plea Agreement
U.S. v. Donte Wise
WDQ - 12-0458
Page 2 of 10

    i.  an agreement existed between two or more persons to violate the federal drug laws by possessing with the intent to distribute five kilograms or more of cocaine; and

    ii.  the Defendant knowingly joined in that agreement.

  b. **Count Three: Possession of a Firearm in Furtherance of a Crime of Violence**

    i.  the Defendant possessed a firearm;

    ii.  the Defendant's possession of that firearm was in futherance of a crime of violence, to wit: conspiracy to interfere with interstate commerce through robbery for which he may be prosecuted in a court of the United States as charged in Count 1 of the Indictment; and

    iii.  the Defendant did so knowingly.

### Penalties

3. The maximum sentences provided by statute for the offenses to which the Defendant is pleading guilty is as follows: Count One: life imprisonment, with a minimum mandatory term of imprisonment of 10 years, a fine of $10 million, and period of supervised release of five years; Count Two: life imprisonment, with a minimum mandatory term of imprisonment of 5 years, which must be served consecutively to any term of imprisonment for any other count, a fine of $250,000, and a term of supervised release of up to 5 years. In addition, the Defendant must pay $200 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

Revised 8/8/08

Plea Agreement
U.S. v. Donte Wise
WDQ - 12-0458
Page 3 of 10

incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

### Forfeiture of Firearm

4. The Defendant understands and agrees that as a result of his guilty plea, he will not be permitted to own, possess, or use a firearm. He forfeits all right, title, and interest in the following firearms:

      a. Jimenez Arms, JA Nine, 9mm handgun, serial number 117695
      b. Ruger, P90DC, .45 caliber handgun, semi-automatic 66131015
      c. Ruger, P95, 9mm handgun, serial number 31674392

### Waiver of Rights

5. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

    a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

    d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

   e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

   f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

   g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

   h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status.

## Advisory Sentencing Guidelines Apply

   6. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

   7. This Office and the Defendant understand, agree and stipulate to the following Statement of Facts which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

   a. **Statement of Facts**

   In August 2012, the Defendant, Donte Wise, and two co-conspirators, Devin Carr and Joseph Brown, met with a confidential source of information (the "CS") working for the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") at a location in Baltimore City, Maryland. The CS told the conspirators that he knew of the location of a narcotics "stash house" that

regularly contained as much as 10 to 14 kilograms of cocaine. The CS explained that he and an associate (a disgruntled drug courier, who was actually an ATF undercover agent (UC)) planned to rob the stash house and would provide half of the stolen cocaine (that is, as much as 7 kilograms) to whomever helped them commit the robbery. The Defendant agreed to commit the robbery with the use of firearms and to distribute the stolen cocaine.

On August 14, 2012, the CS and the UC met with the Defendant and his conspirators and discussed the robbery. During the conversation the UC explained that he (the UC) was a courier of cocaine for a drug trafficking organization and he usually picked up two kilograms of cocaine at a time then delivered it north. The UC said there were always at least ten (10) kilograms of cocaine in the residence that were pressed, wrapped, stamped, and stored in a Styrofoam cooler. While the UC was explaining the scenario, the CS asked the Defendant if he was good. The Defendant told CS-1 "You already know I'm with it, they wouldn't have brought me along if they ain't know I wasn't good." The UC continued to tell everyone the cocaine was guarded by at least two and possibly three armed individuals who usually carried handguns but occasionally had an AK-47. At the end of the explanation, the Defendant stated that he was good to conduct the robbery. Carr then told the UC, "We (the conspirators) was debating on about waitin' for you (the UC) to come out and full blitzin, just start sprayin the door down, kickin' it open...You know that make them want to come out the back door. When they come out the back, we be waiting to come through the back." Carr then said "We got the chopper (a street term for an AK-47), once we hit the door by the locks it's gonna pop straight off. Kick the bitch in and start letting off they gonna, that gonna blow em out." Immediately, following Carr's statements, the Defendant stated, "We hitt'n the door with a K (the AK-47)," while Carr imitated the sound of an automatic weapon, the Defendant continued, "as soon as you (referring to another conspirator) spray we in there." The Defendant further stated, "As soon as you (referring to the same conspirator) go in, two of us is goin straight to the backdoor."

On August 15, 2012 at approximately 8:05 a.m., the CS drove to the McCulloh homes area of Baltimore and picked up the Defendant and his conspirators in anticipation of the planned robbery. The CS then drove the Defendant and his conspirators, to meet the UC at a gas station on Russell Street. While at the gas station, the UC explained the he (the UC) was nervous because he (the UC) did not think that they (the conspirators) were going to go through with the robbery. All three, including the Defendant, then acknowledged that they were ready. The CS then drove the three conspirators, followed by the UC, who was in a separate vehicle, to a storage facility under the guise of obtaining a minivan that the conspirators had requested the CS provide to commit the robbery. Once at the facility, everyone exited their respective vehicles, and waited for the UC to receive the call to pick up the drugs. As they waited, the arrest signal was given by the UC and agents approached to arrest all three conspirators. Each conspirator attempted to flee, but was quickly apprehended. In the process of their flight, the Defendant discarded a Jennings 9mm handgun; Carr threw a Ruger .45 caliber handgun onto the roof of the storage facility; and Brown

threw a Ruger 9mm onto an adjacent roof of the same facility. All three firearms recovered and found to be loaded. During a search conducted incident to their arrest, recovered from the Defendant was a pair of black rubber gloves and black balaclava; from Carr was a black ski mask rolled on top of his head; and from Brown was a pair of black rubber gloves and a black ski mask.

The Government's evidence consists of physical surveillance, audio recordings of telephone calls between the conspirators and investigators as well as audio and video surveillance of the conspirators meetings with the CS and the undercover agent.

The parities stipulate that the Defendant and his conspirators intended to commit a robbery of the stash location with the use of the firearms in their possession, and intended to distribute the more than five kilograms of cocaine that was alleged to have been stored in the location. The parties further stipulate that cocaine is a commodity manufactured outside the state of Maryland and travels in interstate commerce. As such the conspirators, including the Defendant, possessed firearms in furtherance of a robbery, a crime of violence, that would have interfered with the interstate commercial activity of narcotics trafficking.

b. **Guideline Stipulations**

The parties stipulate that for Count Two the **base offense level is 32** because during the period of the conspiracy the Defendant conspired to distribute and possess with the intent to distribute at least five kilograms but less than 15 kilograms of cocaine, pursuant to U.S.S.G. § 2D1.1(c)(4).

The parted further stipulate and agree that for Count Three the guideline range is imprisonment for 60 months, which must be run consecutively to the sentence imposed in Count One.

c. **Acceptance of Responsibility**

This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea

Plea Agreement
U.S. v. Donte Wise
WDQ - 12-0458
Page 7 of 10

of guilty.

### d. Rule 11(c)(1)(C) Plea

The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that the following sentence is the appropriate disposition of this case: as to Count One, 120 months imprisonment in the custody of the Bureau of Prisons; as to Count Three, 60 months imprisonment in the custody of the Bureau of Prisons, consecutive to the sentence imposed for Count One; for a total of 180 months imprisonment in the custody of the Bureau of Prisons. This agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this plea agreement, *either* party may elect to declare the agreement null and void. Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5).

8. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

9. This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute

### Obligations of the United States Attorney's Office

10. At the time of sentencing, this Office will make a recommendation of 180 months incarceration in the Bureau of Prisons.

11. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Indictment that this Office has agreed to dismiss at sentencing.

### Waiver of Appeal

12. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

   a. The Defendant knowingly waives all right, pursuant to 28

Plea Agreement
U.S. v. Donte Wise
WDQ - 12-0458
Page 8 of 10

U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

    b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant reserves the right to appeal any sentence of incarceration greater than 180 months; (ii) and this Office reserves the right to appeal any sentence of incarceration less than 180 months.

    c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

    d. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

    13. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

    14. The Defendant expressly understands that the Court is not a party to this

Plea Agreement
U.S. v. Donte Wise
WDQ - 12-0458
Page 9 of 10

agreement. In the federal system, sentence is imposed by the Court, and the Court is under no obligation to accept this plea agreement. In the event the Court rejects this Rule 11(c)(1)(C) plea agreement, pursuant to Rule 11(c)(5)(C), the Defendant will be informed that he may withdraw his plea. If he persists in the guilty plea thereafter, the Defendant understands that the disposition of the case may be less favorable than that contemplated by this agreement. The Defendant understands that neither this Office, his attorney, nor the Court can make a binding prediction or promise that the Court will accept this agreement. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

15. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
James T. Wallner
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

10/5/12
Date

_____
Donte Wise

Plea Agreement
U.S. v. Donte Wise
WDQ - 12-0458
Page 10 of 10

    I am Donte Wise's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

_10-5-12_              _/s/ Gerry Ruter_
Date                                    Gerry Ruter, Esq